**UNITED STATES of America, Appellee,**

v.

**Oreste ABBAMONTE, Joseph DelVecchio, and Guy Anthony DiGirolamo, Defendants-Appellants.**

**Nos. 646, 647 and 695, Docket 84–1345, 84–1346 and 84–1356.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1985.
Decided April 10, 1985.

John L. Pollok, New York City (Hoffman Pollok & Gasthalter, New York City, Joseph & Stalonas, New York City, on brief), for defendant-appellant O. Abbamonte.

Gerald L. Shargel, New York City, for defendant-appellant J. DelVecchio.

John Nicholas Iannuzzi, New York City (Iannuzzi, Russo & Iannuzzi, New York City, on brief), for defendant-appellant G. DiGirolamo.

Sidney M. Glazer, Atty., Dept. of Justice, Washington, D.C. (Alan H. Nevas, U.S. Atty., William A. Keefer, John H. Durham, Sp. Attys., Dept. of Justice, New Haven, Conn., on brief), for appellee.

Before NEWMAN, KEARSE, and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This pretrial appeal in a criminal prosecution concerns primarily a claim under the Double Jeopardy Clause. Specifically, the issue is whether defendants have made a sufficient showing to require the Government to prove that the narcotics conspiracy alleged in a pending indictment is separate from narcotics conspiracies for which the defendants have previously been convicted and sentenced. Oreste Abbamonte, Joseph DelVecchio, and Guy DiGirolamo appeal from an order of the District Court for the District of Connecticut (T.F. Gilroy Daly, Chief Judge) denying their motions to dismiss charges contained in an indictment returned by a federal grand jury in Connecticut on July 14, 1983. Abbamonte and DelVecchio base their jeopardy claim on their prior conviction in the Southern District of New York; DiGirolamo relies on his prior conviction in the District of Connecticut. Abbamonte and DelVecchio also claim that all the Connecticut charges against them are barred by the plea agreement under which they pled guilty to some of the charges previously brought in the Southern District. We conclude that the double jeopardy claims of all three defendants directed to the pending conspiracy charge require further consideration by the District Court, but that the plea agreement claim of Abbamonte and DelVecchio directed to all pending charges is unavailing.

Count 1 of the pending Connecticut indictment accuses the three appellants and Frank Cotroni, Giovanni Marra, and Michael Corcione of conspiring with each other "and with other persons unknown to the Grand Jury" to distribute heroin in violation of 21 U.S.C. § 846 (1982). The indictment also charges three counts of substantive offenses of transporting more than $5,000 from the United States to Canada without filing required customs reports in violation of 31 U.S.C. §§ 5316, 5322(a) (1982). The conspiracy is alleged to have existed from April 26, 1982, until May 28, 1982, in the District of Connecticut "and elsewhere." The conspiracy is alleged to have involved a scheme whereby Cotroni and Marra in Canada would send quantities of heroin to persons "in the New York City area," including Abbamonte and DelVecchio, using DiGirolamo and Corcione "as middlemen." Four overt acts are alleged. Two concern phone calls from Cotroni to DiGirolamo in Bridgeport, Connecticut, on April 27 and May 9, 1982. The third alleges that on May 10, 1982, DiGirolamo received a quantity of heroin from Corcione

and then met with Abbamonte at Port Washington, New York. The fourth alleges that on May 28, 1982, Corcione sent money to Cotroni and Marra in Canada.

The double jeopardy claim of Abbamonte and DelVecchio rests on their pleas of guilty to Count 1 of a superseding information filed in the Southern District of New York on January 7, 1983. That count accused Abbamonte, DelVecchio, and Lorenzo DiChiara of conspiring with each other, with Francisco Solimene, Rafael Gonzalez, and Aleida Martinez, and with "others unknown" to distribute heroin in violation of 21 U.S.C. § 846. The conspiracy was alleged to have existed in the Southern District of New York from April 1, 1982, until the date of the information, January 7, 1983. Sixteen overt acts were alleged. They detailed occurrences "in the Southern District of New York and elsewhere," including an October 15, 1982, conversation in which Abbamonte said he had heroin available in kilogram amounts, a sale by Abbamonte of three kilograms of heroin in New York City on October 20, 1982, and an agreement by Abbamonte on October 28, 1982, to sell an additional seventeen kilograms of heroin. Abbamonte and DelVecchio pled guilty to the conspiracy charge and to substantive counts of distributing heroin, for which they received aggregate sentences of 25 years and 20 years, respectively.

DiGirolamo's double jeopardy claim is predicated on his conviction on a conspiracy charge in an indictment returned in the District of Connecticut on June 16, 1983. Count 1 of that indictment accused DiGirolamo, his wife Lucy, and two other members of his family of conspiring with each other and with "other persons" to distribute cocaine in violation of 21 U.S.C. § 846. The conspiracy was alleged to have existed from February 23, 1982, until June 6, 1982, in the District of Connecticut "and elsewhere." DiGirolamo pled guilty to the conspiracy charge and to one substantive count of another indictment charging distribution of cocaine, for which he received an aggregate sentence of 16 years.

Appellants rely on various documents and statements by law enforcement officials to support their claims that the Southern District conspiracy to which Abbamonte and DelVecchio pled and the Connecticut conspiracy to which DiGirolamo pled were distribution phases of the overall Canada-Bridgeport-New York City network alleged in the pending Connecticut indictment. Principal reliance is placed on two affidavits of Special Agent Salute of the Drug Enforcement Administration submitted to the District Court in Connecticut in support of applications for authority to wiretap. The first affidavit, dated April 8, 1982, sought authority to wiretap two telephones at DiGirolamo's residence in Bridgeport for 30 days. The second affidavit, dated May 7, 1982, sought an additional 30 days of wiretapping authority for one of DiGirolamo's home telephones and new authority to wiretap two nearby public telephones that DiGirolamo frequently used. Authority was sought to intercept the conversations of various people including Cotroni, Abbamonte, DelVecchio, DiGirolamo, Lucy DiGirolamo, Michael Mahigel, and Victor Riccitelli.

Agent Salute averred that there was probable cause to believe that all of these persons were conspiring to distribute controlled substances, including heroin and cocaine, and that all of them were using interstate wire facilities to conduct an unlawful business enterprise involving controlled substances.

The affidavits detailed the long-time associations of the alleged conspirators, apparently starting with a period in the mid-1970's when Cotroni, Abbamonte, DelVecchio, and DiGirolamo were incarcerated in Lewisburg Penitentiary. Salute also reported information from informants and surveillance, including the following: As early as 1974 Mahigel was among a group controlling the distribution of large amounts of heroin and cocaine in Bridgeport; that in March 1982 Mahigel was distributing cocaine supplied by DiGirolamo and Riccitelli, that DiGirolamo and his wife had been in contact with Cotroni in Canada;

that Cotroni's heroin comes from Italy; that DiGirolamo and Abbamonte were observed entering Abbamonte's residence in Port Washington, New York, carrying cardboard boxes; that both were observed entering an apartment on East 116th Street in East Harlem; that DiGirolamo talks in code to Cotroni in Canada and Abbamonte in New York City when speaking about their heroin and cocaine dealings; that Abbamonte deals in heroin in the area of East 116th Street in East Harlem; and that Abbamonte is DiGirolamo's principal source for cocaine.

Appellants also rely on an affidavit of Special Agent Tully of the Drug Enforcement Administration, which had been presented in support of arrest warrants on the charges initially brought against Abbamonte and DelVecchio in the Southern District, prior to the information to which they pled guilty. In this affidavit, Tully reported that Abbamonte had told an undercover agent that he, DelVecchio, and DiChiara were partners and that DiChiara had obtained heroin from an unknown male who had imported it from Italy. Another pertinent document is an affidavit of Special Agent Hanna of the Federal Bureau of Investigation, which had been presented in support of a complaint charging Abbamonte, DelVecchio, and DiGirolamo with a narcotics conspiracy based on an arrest of all three in New York City on July 7, 1982. In that incident, which did not result in an indictment, DiGirolamo handed a large amount of cash to Abbamonte in a car in which DelVecchio was a passenger. Agent Hanna averred that the money was exchanged for narcotics.

Appellants also relied on statements made by the prosecutor at their sentencing on the Southern District charges to the effect that Abbamonte, DelVecchio, and DiGirolamo had been involved in narcotics transactions in the New York City area as early as December 1981. In addition, the Government had alleged in a sentencing memorandum in connection with the Southern District charges that Abbamonte's organization "operated at the highest levels" and that one of his partners "was the 'pul-ler,' that is, the person who imported heroin from outside the country."

## DISCUSSION

1. *Jeopardy Claims.* Whether a defendant's criminal activities establish his participation in one large conspiracy or two separate conspiracies is an issue on which prosecutors and defense counsel have often changed positions "as nimbly as if dancing a quadrille." *Orloff v. Willoughby,* 345 U.S. 83, 87, 73 S.Ct. 534, 537, 97 L.Ed. 842 (1953). When a defendant challenges a conviction on the ground of variance, he urges that, though the indictment alleged one conspiracy, the evidence showed at least two; the Government contends there was only one conspiracy. *See, e.g., United States v. Sperling,* 506 F.2d 1323, 1340–41 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Bynum,* 485 F.2d 490, 495–97 (2d Cir.1973), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). However, when a defendant challenges a conviction on the ground of double jeopardy, or, as here, seeks to avoid trial on that ground, he contends that only one conspiracy exists, while the Government insists there are at least two. *See, e.g., United States v. Papa,* 533 F.2d 815, 820–23 (2d Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976); *United States v. Mallah,* 503 F.2d 971, 982–87 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

Recognizing the ease with which prosecutors can draft indictments that allege what appear to be separate conspiracies but may actually be parts of an overall conspiracy, we have not resolved double jeopardy claims involving conspiracy charges solely by the "same evidence" test, which inquires only whether evidence required to support one charge would have sufficed to support the other, *see United States v. McCall,* 489 F.2d 359, 362–63 (2d Cir.1973), *cert. denied,* 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974). Instead, to

guard against subdivision of a single conspiracy we have held that "once a defendant introduces sufficient evidence that the two conspiracies alleged were in fact one, the burden shifts to the government to rebut the inference of unity." *United States v. Papa, supra,* 533 F.2d at 821; *see United States v. Bommarito,* 524 F.2d 140, 146 (2d Cir.1975); *United States v. Mallah, supra,* 503 F.2d at 986.

*United States v. Mallah, supra,* and *United States v. Papa, supra,* illustrate our approach to the issue. In *Mallah,* conviction on a count alleging a broad conspiracy was challenged on the basis of a prior conviction for what was described as a conspiracy involving "foot soldiers," 503 F.2d at 986. The dates and geographic areas of the two conspiracy counts overlapped, circumstances that are significant but, as we observed in *Papa,* "not sufficient indicia of a single conspiracy," 533 F.2d at 821. However, in *Mallah,* the foot soldier conspirators were alleged to have conspired with other persons, the conspiracy could not have operated without a larger organization backing it up, and there was evidence that those in one conspiracy were acquainted with personnel in the other. These factors were sufficient to shift to the prosecution the burden of proving separate conspiracies, a burden the Government did not sustain. By contrast, the evidence in *Papa* established the existence of two distinct conspiracies. Though the defendant claiming double jeopardy was at the head of two distribution chains, their separateness was demonstrated by the identification in each conspiracy of different wholesalers linking the head of a distribution network to retailers at the bottom.

The distinctions drawn in *Mallah* and *Papa* are not wholly satisfactory. They suggest that a principal of a distribution network will be more likely to defeat the prosecution's effort to subdivide a large-scale distribution network when the Government indicts a defendant for participation with a bottom tier of the network and again for involvement with the entire enterprise than when it alleges separate chains emanating from a single leadership.

This appears to make the success of a former jeopardy claim turn on whether the prosecutor has attempted to subdivide the enterprise horizontally or vertically. The distinctions between the cases also illustrate the somewhat anomalous point that the less the Government knows about the details of a defendant's conspiratorial associations, the more difficulty it will face in rebutting a claim of a single conspiracy. One might have thought that the Government's unawareness of the connections among those claimed by the defense to be part of a single conspiracy would inure to the prosecution's benefit. Finally, the cases illustrate that there is no litmus test for determining whether one conspiracy is part of another conspiracy and that the answer in each case depends on all of the pertinent circumstances.

■ Accepting the standards that emerge from our prior cases, we conclude that the showing made by Abbamonte and DelVecchio was sufficient to place on the prosecution the burden of showing that the conspiracy charged in the Southern District information was not part of the overall conspiracy charged in the pending Connecticut indictment. Both conspiracies involve distribution of heroin during 1982 in the New York City area. The pending Connecticut indictment alleges that DiGirolamo was a middleman in the Canada-Bridgeport-New York distribution network, and evidence presented at sentencing on the Southern District charge showed that DiGirolamo had been involved with Abbamonte and his partners in drug transactions for a considerable period of time in the New York area. That is a stronger link than the mere friendship that existed between personnel of the two organizations in *Mallah.* In addition, there is evidence that the heroin in both conspiracies came from a source in Italy. Even though Italy is large enough to supply two heroin conspiracies, just as New York City was recognized in *Mallah* to be large enough "to harbor two simultaneous narcotics conspiracies," 503 F.2d at 983, the indication of a common geographic source is probative when com-

bined with the other factors in this case that point toward a single conspiracy. Finally, of key significance is Agent Salute's averment that all three defendants are engaged with Cotroni and others in a business enterprise to distribute heroin and cocaine.

Of course, it is possible, as the Government suggests, that DiGirolamo's only involvement with Abbamonte, prior to the relationship detailed in the pending indictment, was as a purchaser of cocaine from Abbamonte and that the heroin distributed by Abbamonte during the Southern District conspiracy did not come from Cotroni via DiGirolamo. But the evidence thus far presented of similar times, places, and personnel suffices to make the jeopardy claim of Abbamonte and DelVecchio more than a matter of speculation. Even though it may be difficult for the prosecution to demonstrate that the Southern District conspiracy was separate from the conspiracy charged in the pending Connecticut indictment, the Government rendered itself liable to assume that burden when it indicted Abbamonte and DelVecchio for activity that appears to be the same offense for which they had already been convicted.

■ DiGirolamo's jeopardy claim is also of sufficient substance to require the Government to sustain its burden of proof under *Papa* and *Mallah*. The prior Connecticut conspiracy, to which he pled guilty, included the entire time period of the conspiracy charged in the pending indictment. The prior indictment alleged narcotics activity in Connecticut and elsewhere, and the pending indictment alleges distribution of narcotics from Canada to New York through Connecticut. Though the prior conspiracy was alleged to involve cocaine and the pending charge concerns heroin, the evidence presented by DiGirolamo amply shows that the Government has reason to believe that there exists one overall network, headed by Cotroni, that distributes both heroin and cocaine through those, in-

cluding DiGirolamo, who the Government has previously represented in the District Court are involved in a narcotics business involving both heroin and cocaine. The wiretap application named DiGirolamo, his wife, and Mahigel and Riccitelli as members of a conspiracy to operate that overall business, and the application strongly indicated that these four were all involved in the cocaine distribution phase in Connecticut, which resulted in DiGirolamo's prior conviction.

It may be, as the Government contends, that DiGirolamo's prior cocaine activity was the result of purchases from Abbamonte that were wholly independent of the Cotroni organization, and his prior conviction for his role as a distributor of cocaine is not related to his currently alleged role as a middleman in the distribution of heroin. But the overlap of time, place, and personnel points the other way, especially in light of the averment in the wiretap application of one overall business among all the key figures to deal in both heroin and cocaine.

2. *Plea Agreement Claim.* The claim of Abbamonte and DelVecchio that their plea agreement in the Southern District bars trial on any of the charges in the pending Connecticut indictment encounters an initial issue of appealability. In *United States v. Alessi*, 536 F.2d 978 (2d Cir.1976) (*Alessi I*), and in *United States v. Alessi*, 544 F.2d 1139, 1143–52 (2d Cir.) (*Alessi III*),[1] *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976), we held that an order denying dismissal of an indictment and rejecting a claim that trial was barred by a prior plea agreement was immediately appealable. In *Alessi III, id.* at 1152, Judge Friendly expressed considerable doubt as to the wisdom of any pretrial appeals in criminal cases and expressed the hope that the Supreme Court's then pending decision in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651

1. An intervening unreported decision on a mandamus petition, *United States v. Alessi*, 538 F.2d 314 (2d Cir.1976), has been referred to as *Alessi*

II. *See United States v. Alessi, supra*, 544 F.2d at 1142.

(1977), would reject such appeals.[2] *Abney* did not realize Judge Friendly's hopes. On the contrary, the decision upheld the appealability of pretrial orders rejecting double jeopardy challenges. In subsequent decisions, however, the Court has made clear that *Abney* does not permit an interlocutory appeal from every pretrial ruling that would end a criminal proceeding if decided in defendant's favor. The Court has rejected an interlocutory appeal from an order denying dismissal of an indictment challenged on speedy trial grounds, *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), and from an order denying dismissal of an indictment challenged on grounds of vindictive prosecution, *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (per curiam).[3]

■ We are obliged to follow the holding on appealability in *Alessi* unless we have some basis for concluding that that ruling has been eroded by subsequent decisions of the Supreme Court. We do not think this has occurred. It is true that *Abney* and *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), which upheld appealability of an order adjudicating a claim of trial immunity based on the Speech or Debate Clause, both emphasize that pretrial appeal is available only where the defendant asserts a right to be free of the burdens of a trial, not simply those flowing from a conviction. But there is considerable force to appellants' argument that a plea agreement barring prosecution on related charges is intended to preclude trial, not merely conviction, on such charges. Indeed, it is arguable that the whole point of including such a provision in a plea agreement is not simply to restate the protection that the Double Jeopardy Clause would provide in any event, but to

secure the added benefits, first, of avoiding the need to litigate whether the elusive standards of the Double Jeopardy Clause have been exceeded and, second, of securing broader insulation than the Clause provides. We are satisfied that an order denying a colorable claim to dismiss an indictment for violation of a prior plea agreement remains appealable in this Circuit. *But see United States v. Bird*, 709 F.2d 388 (5th Cir.1983) (order denying dismissal of indictment on ground of prior plea agreement not appealable); *United States v. Eggert*, 624 F.2d 973 (10th Cir.1980) (per curiam) (same).

■ The Government also contends that, even if the order is appealable, the remedy for any breach of the plea agreement, if one occurred, is not dismissal of the subsequent indictment but withdrawal of the plea to the prior indictment. Reliance is placed on *Mabry v. Johnson*, ── U.S. ──, 104 S.Ct. 2543, 81 S.Ct. 437 (1984), and that decision's discussion of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The holding in *Mabry* is inapposite. That decision held unenforceable a plea agreement on which no guilty plea had been entered. The agreement had been rescinded by the prosecutor before any plea was entered. 104 S.Ct. at 2546. More pertinent to this appeal is the reference to *Santobello* in *Mabry*, in which the Court observed that "*Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea [*i.e.*, a plea entered upon such a promise]; the Court made it clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies." 104 S.Ct. at 2548 n. 11. In *Santobello*, which was a habeas corpus challenge

---

**2.** These doubts were not shared by then Circuit Judge Feinberg, who concurred only in the result on the appealability issue. 544 F.2d at 1155.

**3.** After *United States v. Hollywood Motor Car Co., supra*, we upheld, somewhat tentatively, the appealability of an order denying dismissal of an indictment for alleged prosecutorial vindic-

tiveness "to the extent that that claim relates to the double jeopardy question," which was fully available for interlocutory review. *United States v. Russotti*, 717 F.2d 27, 32 n. 2 (2d Cir.1983), *cert. denied*, ── U.S. ──, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). Such pendent appellate jurisdiction is arguably available in the instant appeal.

to a state court sentence imposed in violation of a plea agreement, the Court returned the case to the state court to decide whether to order specific performance of the promise or to permit the defendant to replead. 404 U.S. at 263, 92 S.Ct. at 499. However, nothing in *Santobello* or *Mabry* precludes a federal court from determining that the appropriate remedy for breach of a federal prosecutor's plea bargain, on which a plea has entered, is specific performance of the bargain. It seems obvious that our Court in *Alessi I* and *Alessi III* would not have reached the merits of an appeal from an order denying dismissal of a subsequent indictment unless it believed that it had authority to reverse the order and dismiss the indictment had defendant established breach of the plea agreement. We take the same view of our authority here and therefore reach the merits of the claim.

On the merits, Abbamonte and DelVecchio contend that the plea agreement that resulted in their guilty pleas to the 1983 information in the Southern District of New York included a commitment by the Government broad enough to preclude prosecution on any of the counts in the pending Connecticut indictment. The commitment was stated by counsel for Abbamonte during the plea proceedings in New York in the following terms:

> The government has agreed that as part of this plea, firstly that this plea will cover all charges that could have come about by the government arising out of these facts.

No facts were stated at that point in the plea colloquy, though subsequently, the prosecutor detailed sufficient facts to enable the District Court to satisfy itself that there was a factual basis for the plea. *See* Fed.R.Crim.P. 11(f). Appellants contend that the commitment should be construed to bar a subsequent prosecution based on any facts that "the Southern District prosecutors knew or should have known" at the time of the plea. Brief for Appellants Abbamonte and DelVecchio at 27. We disagree.

The sentence from the plea colloquy on which appellants rely immediately followed this statement by Abbamonte's counsel:

> I will state to the Court as the Court is aware, this is a superseding information. Previously there was a complaint and then an indictment.

In context, the remarks of defense counsel most likely reflect no more than the usual Government commitment to consider a plea to a substituted information to be in satisfaction of all the charges set forth in the prior charging documents—in this case both a complaint and an indictment. Even if the commitment extended to other charges that could have been brought based on facts alleged in the original charging documents, here, as in *Alessi*, there is no indication that the plea agreement contemplated any restriction on prosecutions initiated in any district other than the district in which the plea was entered. *See Alessi III,* 544 F.2d at 1154; *see also United States v. Papa, supra,* 533 F.2d at 823–25.

### CONCLUSION

The ruling appealed from is affirmed insofar as it denied dismissal of the indictment against Abbamonte and DelVecchio because of their plea agreement in the Southern District of New York; the ruling is vacated insofar as it denied dismissal of Count 1 of the indictment against all three appellants on grounds of former jeopardy, and the cause is remanded to the District Court for further proceedings on the double jeopardy claim consistent with this opinion.