UNITED STATES of America, Appellee,

v.

Thomas McGOWAN, Defendant–Appellant.

No. 887, Docket 94–1391.

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1995.

Decided June 13, 1995.

---

11. The record shows that an offer of judgment by defendant in the amount of $50,000 was refused by plaintiff.

Before: VAN GRAAFEILAND, WINTER, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This is an appeal by a union official convicted of complicity in the receipt of illegal payments from union employers in violation of the Taft–Hartley Act, 29 U.S.C. § 186(b)(1) and (d)(2). Thomas McGowan was the Manhattan business agent for Local 580 of the International Association of Bridge, Structural and Ornamental Ironworkers Union ("Local 580"). He was found guilty on two counts involving payments totalling $15,000 made by Sanford Monosson, president of Mannix Industries, Inc., an employer of members of Local 580 at the Spring Creek construction project in Brooklyn. McGowan was sentenced to two years in jail and a fine of $35,000.

His primary contention on appeal is that his prosecution was barred under the doctrines of double jeopardy and collateral estoppel by reason of his earlier prosecution and acquittal, also in the Eastern District of New York, in a case known as the *"Windows"* trial. He contends also that the trial judge made erroneous rulings relating to: (i) whether McGowan could be convicted as an aider and abettor in payments to one Morrissey, who was not an officer or employee of the union; (ii) whether McGowan could be convicted on the basis of payments made by Monosson on behalf of Tishman Construction Company ("Tishman"), the general contractor, if Tishman was not an employer of members of Local 580; and (iii) whether McGowan should have been permitted to impeach a non-witness named Savino, whose tape-recorded conversations were put before the jury. We find no error and affirm.

*Background*

The evidence at trial showed that Monosson arranged with McGowan and his co-defendant Nulty, an employee of Local 580, to make payments for the benefit of representatives of Local 580 to assure labor peace in the construction of "Spring Creek," a subsidized prefabricated housing project in Brooklyn. The government relied largely on the testimony of Monosson, who entered into a

Peter J. Driscoll, New York City (Driscoll & Redlich; Linda A. Lacewell, Morvillo, Abramowitz, et al., New York City, of counsel), for defendant-appellant.

Peter A. Norling, Asst. U.S. Atty. (Zachary W. Carter, U.S. Atty., E.D.N.Y., David C. James and Neil E. Ross, Asst. U.S. Attys., of counsel), for appellee.

cooperation agreement following the offense, and tape recordings made by Peter Savino, a facilitator, who was acting as a government informant.

Monosson testified for the government about a meeting he held at a restaurant on March 7, 1988, with McGowan, Nulty, Savino, and union member John "Sonny" Morrissey, where they discussed the Spring Creek payoff. Savino's surreptitious recording of the conversation was received in evidence.

A week or so after the meeting, Savino told Monosson that the payoff would be $25,-000. Several weeks later, around June 7, 1988, Monosson delivered $10,000 to Savino's partner Jerry Costabile, and a few weeks later on June 27, 1988, Monosson's son delivered $5,000 to Savino.

McGowan and Nulty were indicted on three counts: Count I charged conspiracy; and Counts II and III charged the payments made on June 7 and June 27.

McGowan moved before trial to dismiss the indictment on the grounds of double jeopardy and collateral estoppel relating back to his trial and acquittal on similar charges in 1990 in the *Windows* prosecution, *United States v. Mangano et al*, 90 Cr. 0446 (E.D.N.Y.). McGowan claimed below that his acquittal in the earlier case required dismissal of this indictment. The district court ruled in McGowan's favor as to Count I, the conspiracy charge, holding that it was barred on grounds of double jeopardy by the conspiracy charges brought against McGowan in the previous case. The court, however, rejected McGowan's double jeopardy claim regarding Counts II and III and rejected the collateral estoppel claim altogether. *United States v. McGowan*, 854 F.Supp. 176 (E.D.N.Y.1994).

After a one-week jury trial, McGowan was found guilty on both substantive counts.

### Discussion

#### I. Double Jeopardy and Collateral Estoppel

McGowan's claims of double jeopardy and collateral estoppel require review of the earlier prosecution. In 1990, McGowan and 14 other defendants, including major organized crime figures, were indicted in a large-scale labor racketeering RICO and conspiracy case. The indictment set forth 69 counts involving extortion, mail fraud, and labor payoffs in window replacement jobs. It charged that between 1978 and 1990, a racketeering enterprise centered in La Cosa Nostra organized crime families controlled window replacement in the New York City area. In Count IV of the indictment, McGowan was charged with labor payoff conspiracy in violation of § 186(b) of the Taft–Hartley Act.

The *Windows* indictment did not mention the Spring Creek project. The defendants in that case made a series of requests for bills of particulars; in the third supplemental request defendants asked in part: "identify all private (rather than [New York City Housing Administration]) contracts which were allegedly the subject of labor payoffs." In response, the government wrote:

> Response: Numerous window jobs during the period of the indictment were the subject of payoffs to various labor unions. The recorded evidence furnished to the defendants include references to these jobs, including: [a list of 20 jobs, of which number 10 was] Spring Creek.

The *Windows* trial consumed approximately six months. The jury heard evidence of numerous payoffs, extortions and frauds, centered in mob control of labor unions. No evidence was received of the Spring Creek payments. However, evidence was introduced of the March 7, 1988 meeting between McGowan, Nulty, Savino, Monosson, and Morrissey discussing payments for the Spring Creek job. At the end of trial, on October 24, 1991, the jury acquitted McGowan on the charge of conspiracy to cause illegal payments to union representatives. He contends that the *Windows* acquittal represented a finding that he did not agree to illegal payments relating to the Spring Creek job and thus required dismissal of this indictment.

In denying his claim of collateral estoppel, Judge Dearie wrote:

> McGowan must demonstrate that the jury in *Windows* could not reasonably have reached its verdict acquitting McGowan on

**12**

the broad labor payoff conspiracy charge without also deciding that McGowan was innocent of conspiring to accept a labor payoff concerning the Spring Creek development. In fact, the limited amount of evidence involving the Spring Creek project represented a minuscule aspect of the Windows trial, and was never fully developed at trial.... A realistic evaluation of the Windows verdict reveals that the jury did not, by any means, necessarily find McGowan innocent of the substantive Spring Creek payoffs.

*McGowan,* 854 F.Supp. at 185–86. We agree with Judge Dearie.

 To determine whether collateral estoppel bars a later prosecution, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (internal quotation omitted). The defendant bears the burden to persuade the court that the issue he seeks to foreclose was "necessarily decided in his favor by the prior verdict." *United States v. Citron,* 853 F.2d 1055, 1058 (2d Cir.1988) (internal quotation omitted). This court has previously noted that "[s]ince it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

 The defendant has not convinced us that this case is one of those "rare situations." In our view, the *Windows* jury's verdict expresses no conclusion whatever about the Spring Creek job. As noted, the *Windows* jury did not hear evidence of the Spring Creek payments; it heard the evidence only of the discussions at the March 7, 1988 meeting. The government argues convincingly that this evidence was proffered in the *Windows* trial not to show a transaction upon which liability could be found, but only as evidence showing the nature of the conspiratorial relationship among the participants in the meeting to support liability arising from other actions. This contention is reinforced by the summations in the *Windows* trial; the government did not argue that the jury might find McGowan guilty by reason of his agreement to payments related to Spring Creek. Nor did the court mention Spring Creek in the charge as a possible basis of liability for conspiracy to make illegal payments.

We conclude that the evidence relating to Spring Creek in the *Windows* trial was offered only to show the nature of the conspiratorial relationship and enterprise, and not to give the jury an incident upon which it might find liability. So far as we can discern, the *Windows* jury probably never considered whether McGowan agreed to an illegal payment relating to the Spring Creek job. We therefore cannot find that the *Windows* verdict included a finding that is incompatible with McGowan's guilt in the subsequent trial.[1]

McGowan makes the further argument that, regardless of the evidence offered, the jury should be deemed to have decided the Spring Creek conspiracy issue in McGowan's favor because it was charged in the *Windows* indictment. He acknowledges that the Spring Creek job is not mentioned in the

---

1. This circumstance differs significantly from that in *United States v. Calderone,* 982 F.2d 42, 48 (2d Cir.1992), where we held that the earlier dismissal of conspiracy charges precluded a subsequent substantive telephone charge that contained the previously dismissed conspiracy as one of its elements. Our opinion forbade retrying defendants "on smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until [the government] finds one small enough to be proved to the satisfaction of a jury."

In *Calderone* the conspiracies included in the telephone counts in the second prosecution were each part of a large conspiracy that had already been tried and dismissed. Here, in contrast, the Spring Creek conspiracy was not tried in the first round. Although it could have been included in the first conspiracy, it was not. The prior *Windows* verdict did not (necessarily) include a finding that McGowan did not conspire for illegal payments in connection with Spring Creek. The *Windows* acquittal is not inconsistent with the guilty verdict in this trial.

actual *Windows* indictment but contends it is incorporated by reference by reason of its being named in a bill of particulars. The weakness of this argument is that the government's answer to the third supplemental request for particulars did not list Spring Creek *as a transaction upon which liability could be found.* It merely stated that the evidence would include a reference to that job.[2] Such a reference was designed to notify defendants of evidence that would be presented—not to identify a transaction asserted as a basis of liability.

We also agree with Judge Dearie's conclusion that the *Windows* trial did not bar subsequent trial of the substantive counts (Counts II and III) on grounds of double jeopardy. The district court applied the multi-factor *Korfant* analysis, *United States v. Korfant,* 771 F.2d 660 (2d Cir.1985), to determine whether the conspiracies charged in *Windows* and the present case were the same offense for double jeopardy purposes. The *Korfant* inquiry implements a policy forbidding the government from multiplying opportunities to prove a conspiracy, in derogation of the Double Jeopardy clause, by breaking up a single conspiracy into multiple segments. *See also United States v. Calderone,* 982 F.2d 42, 48 (2d Cir.1992) ("The Government cannot be permitted to retry defendants on smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until it finds one small enough to be proved to the satisfaction of a jury."). The court found that the broad conspiracy charged in *Windows* functionally encompassed the narrow conspiracy charged in the subsequent case; it thus dismissed Count I, the conspiracy court, on double jeopardy grounds. *McGowan,* 854 F.Supp. at 179–84. However, such analysis does not bar prosecution of substantive offenses committed in furtherance of the conspiratorial objectives. The Supreme Court has made clear that, for double jeopardy purposes, conspiracy to commit an offense and commission of that offense itself are separate. *United States v. Felix,* 503 U.S. 378, 388–90, 112 S.Ct. 1377,

1384, 118 L.Ed.2d 25 (1992). The attachment of jeopardy as to the trial of a conspiracy does not bar subsequent trial of a substantive offense that was an objective of the conspiracy. We conclude that McGowan's prosecution for conspiracy in *Windows* does not bar his later prosecution for the substantive offenses involving Spring Creek.

McGowan makes a further argument based on the fact that § 186(b)(1) defines the substantive offense in terms that include not only "accept[ing]" an illegal payment, but also "agree[ing] to" accept an illegal payment. 29 U.S.C. § 186(b)(1) ("It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."). Under this statute the jury was charged that it might find McGowan guilty if he "accepted, or agreed to accept, delivery or payment of the sum of money."

McGowan contends that *agreeing to* accept an illegal payment is indistinguishable under § 186(b)(1) from conspiring to accept an illegal payment under 18 U.S.C. § 371. If, by reason of the *Windows* acquittal, double jeopardy barred trying him for conspiracy in connection with the Spring Creek job, as Judge Dearie ruled, then it must equally protect him from being tried for agreeing to accept illegal payments for Spring Creek. He contends the two are indistinguishable, and that the same result must obtain for each.

McGowan's argument is seductive but, on closer analysis, unpersuasive. The differences between conspiracy under 18 U.S.C. § 371 to violate § 186(b)(1), of which he was acquitted in the *Windows* trial, and agreeing to accept an illegal payment under § 186(b)(1), of which he was convicted in the Spring Creek trial, were sufficient so that both may be charged without violating double jeopardy.

The test under *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182,

---

**2.** In a subsequent letter to the court summarizing then-pending pre-trial matters, the government characterized the above information as "a list of all private jobs involving Local 580 labor payoffs about which evidence will be offered at trial."

**14**

76 L.Ed. 306 (1932), for determining whether double jeopardy bans trial of a second, assertedly different, charge depends on the comparison of the necessary elements of the two charges. Double jeopardy is violated unless each charge includes a necessary element that is not included in the other. Conspiracy under § 371 to violate § 186(b)(1) and the "agrees to" branch of the substantive offense under § 186(b)(1) each have at least one essential element not required by the other, so that each may be separately prosecuted.

■■■ The § 371 conspiracy charge requires, first, that there be two or more bona fide conspirators. Agreement by a union official with one who is only pretending to conspire (while acting in undercover capacity for the government) does not satisfy the requirement of the conspiracy statute, 18 U.S.C. § 371, *see, e.g., United States v. Hurtado*, 47 F.3d 577, 586 (2d Cir.1995); *United States v. Hendrickson*, 26 F.3d 321, 333 (2d Cir.1994), although such evidence would satisfy the requirement of the substantive offense of a union representative's agreeing to accept an illegal payments under § 186(b)(1). The conspiracy, furthermore, requires an overt act, which is not a requirement of § 186(b)(1).

■■■ At the same time, the "agreeing to" branch of § 186(b)(1) has a requirement that is not required by the conspiracy statute. Section 186(b)(1) cannot be satisfied unless the defendant is a "representative" of the employer's employees (or an "officer or employee" of the union representing the employees) and agrees to accept or receive the alleged payment.[3] In contrast, the crime of *conspiracy* to violate § 186(b)(1) can be satisfied where no representative of the employees (or officer or employee of the employees'

union) agrees to accept a payment. For example, the conspiracy offense would be satisfied if two or more representatives of management conspired together to cause a union representative to accept payment, even if the union representative did not agree to accept the payment. It would also be satisfied if the employer and a union representative conspired together to convince another union representative to accept an illegal payment. Those circumstances, however, would not satisfy the requirements of the "agrees to" branch of § 186(b)(1) that a representative of the employees agree to accept a payment.

We conclude accordingly that each of the two statutes—§ 371 covering conspiracy to violate § 186(b)(1), and the "agrees to" branch of § 186(b)(1)—requires proof of an element not required by the other. The *Blockburger* test is accordingly satisfied, and the acquittal of McGowan for conspiracy does not protect him from trial for having agreed to receive payments in violation of § 186(b)(1).[4]

*II. "Representative" within meaning of § 186*

McGowan argues that the district court erred in refusing to charge the jury that he could not be found guilty under a theory of aiding and abetting Morrissey in receiving payoffs. The parties stipulated that Morrissey was a member of Local 580 but not an officer or employee. McGowan contends that because Morrissey was not an officer or employee of Local 580, a payment to him could not be the basis of a violation of § 186, and therefore McGowan could not be properly convicted of aiding and abetting a payment to him.

Section 186(a)(1) and (a)(2) provide:

---

**3.** This results from § 186(b)(1)'s cross-reference to § 186(a)(1) and (2). Section 186(b)(1) makes it unlawful for "any person to request, demand, receive, or accept, or agree to receive or accept any payment ... prohibited by subsection (a)...." For a payment to be prohibited by subsection (a) it must be made by an employer (or employer's representative) "(1) to any representative of any of his employees ..." "or (2) to ... any officer or employee [of a labor organization which represents employees of the employer]."

**4.** We recognize an arguable tension between Judge Dearie's dismissal of the conspiracy count and his upholding of the substantive count based upon virtually the same transaction. *See Calderone*, 982 F.2d at 48. The dismissal of the conspiracy count is not before us. In upholding the substantive count, we need not decide whether we agree with the trial court's dismissal of the conspiracy count.

(a) It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other things of value—

(1) to any representative of any of his employees ...; or

(2) to any labor organization, or any officer or employee thereof, which represents ... any of the employees of such employer....

Section 186(b)(1) provides:

(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or any thing of value prohibited by subsection (a) of this section.

Section 186(b)(1) thus covers payments not only to officers and employees of unions, but also to "any representative of any of [the employer's] employees." A representative of the union would be covered. Although Morrissey was not an *elected* representative, the statute does not so require. In a discussion of a predecessor version of § 186, the Supreme Court noted that "a narrow reading of the term 'representative' would substantially defeat the congressional purpose." *United States v. Ryan,* 350 U.S. 299, 304, 76 S.Ct. 400, 404, 100 L.Ed. 335 (1956). Morrissey could be found functionally to be a representative. The court recognized that whether Morrissey was a representative within the meaning of § 186 was a factual question to be determined by the jury.

The evidence at trial showed that Morrissey functioned as a representative of the union. At the March 7 meeting, McGowan and Nulty would not discuss the issue of Local 580's representation on the Spring Creek project until Morrissey was present. Later in the conversation, Savino told Monosson, and Morrissey confirmed, that Monosson's dealings with the union were to go through Morrissey.

The jury was properly permitted to find that Morrissey acted as a "representative" of the employees for the purposes of § 186.

### III. Employer made payoffs on behalf on non-employer

McGowan also contends that the district court should have allowed him to argue that because the payoff was made on behalf of Tishman, which was not an employer of the union's labor force, the requirements of § 186(b)(1) were not met. The contention is without merit. The evidence showed that the payments were made by Monosson, who was president of Mannix Industries. Mannix was an employer of Local 580 membership. The payments therefore came within the terms of § 186(b)(1).

McGowan's argument is based on Monosson's testimony that he made the payments on behalf of the general contractor Tishman, because Tishman wanted to insure labor peace. The district court correctly ruled that it was of no legal consequence on whose behalf the payments were made. It is true that if Tishman had made the payments directly, they would not have been covered as Tishman was not an employer of Local 580 labor. But, as the payments were made by the president of Mannix, an employer, the statute is implicated regardless of the fact that the payments were made for the account of another. *See United States v. Cody,* 722 F.2d 1052, 1059 (2d Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984).

### IV. Challenge to credibility of a non-witness

Lastly, McGowan claims that the district court should have allowed him to challenge the credibility of Savino, the government's informant.

This claim is without merit. Savino was not a witness at trial, and his out-of-court statements were not admitted for their truth. We do not agree with the argument that "[d]efense counsel should have been permitted free rein in challenging the credibility of Savino because Savino was a central figure in this trial." (Br. at 48) Because Savino's credibility was irrelevant, the district court was well within its discretion in denying impeachment. "Absent an abuse of discretion, the decision of the trial judge to admit or

**16**

reject evidence will not be overturned by an appellate court." *United States v. Sun Myung Moon,* 718 F.2d 1210, 1232 (2d Cir. 1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). No abuse of discretion occurred here.

The judgment of the district court is affirmed.