**UNITED STATES of America**

v.

**Frank ESTRADA, et al.**

**No. CRIM.3:00CR 227(SRU).**

United States District Court, D. Connecticut.

Feb. 22, 2002.

Peter D. Markle, Karen L. Peck, Stephen C. Robinson, U.S. Attorney's Office, New Haven, CT, Alex V. Hernandez, Alina Marquez, U.S. Attorney's Office, Bridgeport, CT, for U.S.

Thomas E. Minogue, Jr., Kleban & Samor, PC, Southport, CT, Jason P. Gladstone, Westport, CT, Joseph W. McQuade, Kainen, Escalera & McHale, PC, Hartford, CT, Margaret P. Levy, Hartford, CT, James A. Wade, Craig A. Rabbe, Robinson & Cole, Hartford, CT, Peter L. Truebner, Stamford, CT, Frank J. Riccio, Bridgeport, CT, David A. Moraghan, Smith, Keefe, Moraghan & Waterfall, Torrington, CT, Dan E. LaBelle, Brett Michael Szczesny, Halloran & Sage, Westport, CT, Robert Gerard Golger, Quatrella & Rizio, Fairfield, CT, Matthew Joseph Collins, Manchester, CT, John T. Walkley, Monroe, CT, Francis L. O'Reilly, O'Reilly & Shaw, Fairfield, CT, Bruce D. Koffsky, Stamford, CT, Vito A. Castignoli, Milford, CT, Audrey A. Felsen, Stamford, CT, Michael Dolan, Law Offices of Jack O'Donnell, New Haven, CT, Alexander H. Schwartz, Southport, CT, Jonathan J. Einhorn, New Haven, CT, Robert James Sullivan, Westport, CT, Joseph J. Colarusso, Law Offices of Joseph J. Colarusso, Stamford, CT, Lawrence S. Hopkins, New Haven, CT, Howard C. Eckenrode, Meuser, Eckenrode & Hayes, Milford, CT, Elliot R. Warren, Westport, CT, Michael Moscowitz, Moscowitz, Chapman & King, New Haven, CT, Lewis H. Chimes, Garrison, Phelan, Lvin–Epstein, Chimes & Richardson, New Haven, CT, Michael O. Sheehan, Sheehan & Reeve, New Haven, CT, Kurt F. Zimmermann, Silverstein & Osach, New Haven, CT, Rudolph Miller, Jamaica Plain, MA, Jason P. Gladstone, Westport, CT, Jeffrey R. Hellman, Zeisler & Zeisler, P.C., Bridgeport, CT, Michael Stanton Hillis, Dombroski Knapsack & Hillis, New Haven, CT, Terri Ann Knapsack, Dombroski, Knapsack & Hillis, New Haven, CT, John P. McCarthy, Fairfield, CT, C. Thomas Furniss, Furniss & Quinn, Hartford, CT, Peter A. Kelly, New Haven, CT, David V. Esposito, Hamden, CT, Salvatore J. Petrella, Cromwell, CT, Peter J. Schaffer, Stamford, CT, Diane Polan, New Haven, CT, Christopher J. McCarthy, Brown, Paindiris & Scott, Glastonbury, CT, Howard C. Eckenrode, Meuser, Eckenrode & Hayes, Milford, CT, Richard S. Cramer, Wethersfield, CT, James E. Swaine, Law Offices of James E. Swaine, New Haven, CT, Howard C. Eckenrode, Meuser, Eckenrode & Hayes, Milford, CT, Jeremy N. Weingast, Hartford, CT, for Defendants.

### *RULING ON HECTOR GONZALEZ' MOTION TO DISMISS THE INDICTMENT*

UNDERHILL, District Judge.

Hector Gonzalez ("Gonzalez") has moved to dismiss the third superseding indictment (the "Connecticut Indictment") arguing that it violates the Double Jeopardy Clause of the Fifth Amendment. Specifically, Gonzalez argues that the Connecticut Indictment, in which he is

charged in separate counts with conspiracy to possess with intent to distribute heroin and with conspiracy to possess with intent to distribute cocaine base or "crack," seeks to punish him for the same conduct that was the subject of a prior indictment returned in the Eastern District of New York, to which Gonzalez pled guilty in 1997 (the "New York Indictment").[1] The Government opposes Gonzalez' motion, and argues that the two indictments charge distinct conspiracies and that Gonzalez' double jeopardy rights, therefore, would not be infringed by requiring Gonzalez to stand trial on the charges in the Connecticut Indictment.

For the following reasons, the court concludes that Count 12 of the Connecticut Indictment is distinct from the conspiracy charged in the New York Indictment. The court further concludes, however, that the conspiracy charged in Count 13 of the Connecticut Indictment is the same as that charged in the New York Indictment, but that Count 13 should not be dismissed because the Government did not know, and could not reasonably have known, of the facts supporting the conspiracy charged in Count 13 at the time Gonzalez was charged in the New York Indictment.

## DISCUSSION

### 1. Gonzalez has met his initial burden of showing that his double jeopardy rights are implicated by the two indictments.

A defendant moving to dismiss an indictment charging conspiracy on double jeopardy grounds bears the initial burden of demonstrating that the two charged conspiracies are in fact the same. *United States v. Reiter*, 848 F.2d 336, 341 (2d Cir.1988). A defendant meets this burden

by making a "nonfrivolous showing that two indictments charged only one conspiracy." *United States v. DelVecchio*, 800 F.2d 21, 22 (2d Cir.1986); *see also Grady v. Corbin*, 495 U.S. 508, 523 n. 14, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) ("All nine Federal Circuits which have addressed the issue have held that 'when a defendant puts double jeopardy in issue with a nonfrivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses.' "), *overruled on other grounds*, *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Such a showing can be made by "demonstrating sufficient facts of similarity between separately charged conspiracies to put [the defendant's] double jeopardy rights in issue." *Id.*

Gonzalez has met his initial burden of demonstrating sufficient similarity between the two indictments. First and foremost, it is undisputed that, at the time he was arrested, Gonzalez was in New York to purchase drugs for sale in Connecticut with the proceeds from prior Connecticut drug sales. Two cooperating witnesses have already testified in trials of Gonzalez' co-defendants in this action, that "Gonzalez act[ed] as a lieutenant in the [Estrada] organization and was responsible for, among other things, collecting drug trafficking proceeds at the organization's headquarters in the P.T. Barnum Housing Project and traveling to New York to obtain more narcotics." (Govt's Supp.Memo. at 2.) The Government has also expressed its intent to use the circumstances of Gonzalez' New York conviction at Gonzalez' trial on the Connecticut In-

---

1. Gonzalez is currently incarcerated as a result of pleading guilty to the charges in the New York Indictment.

dictment, and has opposed Gonzalez' motion to exclude evidence of the New York conviction under Federal Rule of Evidence 404(b).

Second, the two indictments, on their face, display at least some overlap. Specifically, the entire time frame of the conspiracy charged in the New York Indictment ("on or about May 30 through June 4, 1997")[2] is contained within the times charged in the Connecticut Indictment ("some time in or about 1991 ... up to and including May 2001," for the heroin conspiracy and "some time in or about 1995 ... up to and including January 2001," for the cocaine base or crack conspiracy). Although the two indictments name different co-defendants, each indictment also alleges that Gonzalez conspired with unnamed "others." The indictments can be plausibly read as alleging: (1) the unnamed "others" in the New York indictment include some of the named defendants in the present indictment; (2) the unnamed "others" in the present indictment include Gonzalez's co-defendant in the New York indictment; and/or (3) that the unnamed "others" in both indictments include some of the same persons, although they are not named in either indictment. Finally, both indictments charge the same statutory offense, conspiracy to possess with intent to distribute a controlled substance.

█ Based on the foregoing, the court concludes that Gonzalez has presented sufficient evidence to sustain his initial burden and put his double jeopardy rights at issue. *See United States v. Abbamonte,* 759 F.2d 1065, 1067 (2d Cir.1985) (where information presented indicated that previously prosecuted conspiracies were simply distribution phases of overall narcotics conspiracy charged, there was sufficient

information to shift the burden to the government), *overruled on other grounds, United States v. Macchia,* 41 F.3d 35 (2d Cir.1994).

**2. *The Government has met its burden of establishing that the conspiracy charged in Count 12 of the Connecticut Indictment is distinct, but has not met that burden with respect to Count 13 of the Connecticut Indictment.***

█ Because Gonzalez has met his initial burden, the burden thus shifts to the government "to rebut the inference of unity." *Reiter,* 848 F.2d at 341. The Government must establish distinct conspiracies by a preponderance of the evidence. *United States v. DelVecchio,* 800 F.2d 21 (2d Cir.1986). In determining whether successively charged conspiracies amount to the same offense, the Second Circuit considers the following factors, gathered in *United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985) (collectively the "*Korfant* factors"): "(1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies." *United States v. Macchia,* 35 F.3d 662, 667 (2d Cir.1994).

The court considers the "*Korfant* factors with the lively awareness that no dominant factor or single touchstone determines" whether successive conspiracy prosecutions "appear in fact and in law the same." *Id.* at 668. "[T]here is no litmus test for

**2.** Gonzalez' plea agreement in New York, however, covers conduct from January 1, 1997 to June 4, 1997.

determining whether one conspiracy is part of another conspiracy [; rather] the answer in each case depends on all of the pertinent circumstances." *Abbamonte*, 759 F.2d at 1069. Applying the *Korfant* factors to the pertinent circumstances of this case, the court concludes that the Government has met its burden of showing that the conspiracy charged in the New York indictment is distinct from the conspiracy charged in Count 12 of the Connecticut Indictment. The Government has not, however, met its burden of showing that the conspiracy charged in the New York indictment is distinct from the conspiracy charged in Count 13 of the Connecticut Indictment.

■ As a preliminary matter, it is important to note that Gonzalez asserts that both Counts 12 and 13 of the Connecticut Indictment are duplicative of the conspiracy charged in the New York Indictment. The Government has overwhelmingly met its burden of demonstrating that the conspiracy charged in Count 12 of the Connecticut Indictment is distinct from that charged in the New York Indictment. Although both indictments charge Gonzalez with conspiracy to possess with intent to distribute a controlled substance, the controlled substances he is alleged to have conspired to possess differ. Specifically, in Count 12 of the Connecticut Indictment, Gonzalez is charged with conspiracy to possess with intent to distribute heroin. In the New York Indictment he is charged with conspiracy to possess with intent to distribute cocaine. It is undisputed that, at the time of his arrest in connection with the New York Indictment, Gonzalez was purchasing cocaine, not heroin.

Notwithstanding the Government's loose reference in its papers to the "Estrada organization," it is also clear from the face of the Connecticut Indictment and the evidence adduced at the trial of Gonzalez' co-defendants in this case that the Estrada heroin conspiracy (charged in Count 12), and the Estrada cocaine base or "crack" conspiracy (charged in Count 13), are themselves distinct. Indeed, neither Gonzalez nor any of his co-defendants have challenged Counts 12 and 13 of the Connecticut Indictment as duplicative. Thus, with respect to Count 12 of the Connecticut Indictment, the Government has demonstrated, by a preponderance of the evidence, that it is distinct from the conspiracy charged in the New York Indictment. *Cf. Abbamonte*, 759 F.2d at 1070 ("Though the prior conspiracy was alleged to involve cocaine and the pending charge concerns heroin, the evidence presented . . . amply shows that the Government has reason to believe that there exists one overall network . . . that distributes both heroin and cocaine. . . .").

■ In contrast, although the controlled substance charged in Count 13 of the Connecticut Indictment (cocaine base or "crack"), also differs from that charged in the New York Indictment (cocaine), that difference is of no moment. Gonzalez was purchasing the cocaine in New York precisely so that it could be converted into cocaine base or "crack" and sold in Connecticut. Thus, the difference in substances charged in Count 13 of the Connecticut Indictment and the New York Indictment, rather than suggesting disunity, helps demonstrate the interconnectedness of those two conspiracies.

The remaining *Korfant* factors, especially factors seven and eight (the existence of common objectives and the interdependence between the conspiracies), also strongly support Gonzalez' claim of unity between the conspiracies charged in the New York Indictment and Count 13 of the Connecticut Indictment. Specifically, the undisputed fact that Gonzalez was in New York solely to purchase cocaine to be

brought back to Connecticut demonstrates that the conspiracies shared a common objective. The Government has presented no information indicating that Gonzalez was involved with Jairo Cano–Lopez ("Cano–Lopez"), his co-defendant in the New York Indictment, for any purpose other than to purchase cocaine for conversion and sale as cocaine base in Connecticut. Nor has the Government presented evidence that Cano–Lopez was involved in any illegal activities other than to serve as a middleman for Gonzalez in this purchase. Thus, the sole purpose of the conspiracy charged in the New York Indictment was the purchase of cocaine for use in the broader conspiracy alleged in Count 13 of the Connecticut Indictment: the sale of cocaine base or "crack" in Connecticut. Those two conspiracies thus not only share common objectives, but are also, for the same reasons, completely interdependent.

The overlap of time among the conspiracies charged in Count 13 of the Connecticut Indictment and the New York Indictment further confirms that the same conspiracy is at issue in both. The Government argues that the two indictments charge different time frames because Gonzalez' involvement in the conspiracy charged in Count 13 of the Connecticut Indictment straddled his involvement in the conspiracy charged in the New York Indictment. This time frame, however, rather than reasonably supporting the existence of a brief hiatus during which Gonzalez participated in a separate conspiracy, more reasonably suggests that he was involved in the conspiracy charged in Count 13 of the Connecticut Indictment at the time he engaged in the acts charged in the New York Indictment.

Furthermore, although the crime for which Gonzalez was charged in the two indictments does not require proof of an overt act, the Government has expressly stated its intent to use the facts underlying Gonzalez' guilty plea to the New York Indictment at Gonzalez' upcoming trial to establish his guilt in this action. The Government's position emphasizes the overlap between the conspiracies charged in Count 13 of the Connecticut Indictment and the New York Indictment.

The Government correctly notes that the named participants in the two conspiracies do not overlap at all, beyond Gonzalez himself. This fact is, however, rendered significantly less probative in light of the fact that the Government candidly admits that Gonzalez was in New York to purchase drugs for conversion into cocaine base and sale in Connecticut as alleged in Count 13 of the Connecticut Indictment. Similarly, the fact that the geographic scopes of the two conspiracies do not overlap is not probative because Gonzalez left Connecticut to purchase cocaine to be returned to Connecticut and distributed in furtherance of the conspiracy charged in Count 13 of the Connecticut Indictment. Finally, neither party has submitted any information concerning purported similarities or differences of operation between the two charged conspiracies.

Thus, when the conspiracy charged in the New York is viewed for what it indisputably was, an attempted purchase of cocaine to supply the broader conspiracy charged in Count 13 of the Connecticut Indictment, there is little doubt that the charged conspiracies are the same. *Cf. United States v. Rivera,* 844 F.2d 916 (2d Cir.1988) (no indication that the drugs sold in the prior conspiracy were marketed by the same organization alleged in the second conspiracy); *United States v. McGowan,* 58 F.3d 8, 13 (2d Cir.1995) (affirming conclusion that previously charged broad conspiracy "functionally encompassed" narrower conspiracy charged in subse-

quent case). This conclusion is consistent with the ultimate goal of the "[t]he *Korfant* inquiry [which is to] implement[ ] a policy forbidding the government from multiplying opportunities to prove a conspiracy, in derogation of the Double Jeopardy clause, by breaking up a single conspiracy into multiple segments." *Id.* Thus, for the same reasons that "it would be preposterous to argue that, if several persons combine to sell drugs generally, that single venture breaks up into as many separate ventures as there chance to be sales [because] [t]he sales are the conclusion and the fruit of the original plan, the very reason for its being ...," *United States v. Mazzochi,* 75 F.2d 497 (2d Cir. 1935), it would be improper to conclude that Gonzalez' attempted purchase of cocaine as alleged in the New York Indictment was a distinct conspiracy from the overarching "single venture" to procure cocaine to be converted and sold as cocaine base as alleged in Count 13 of the Connecticut Indictment. The Government's proposed splintering of the conspiracy charged in Count 13 of the Connecticut Indictment from the conspiracy charged in the New York Indictment thus runs afoul of Gonzalez' double jeopardy rights.

### 3. Dismissal is not, however, appropriate because the Government did not know, and could not reasonably have known, of the facts supporting the conspiracy charged in Count 13 of the Connecticut Indictment at the time Gonzalez was charged in the New York Indictment.

The court's conclusion that Count 13 of the Connecticut Indictment and the New York Indictment charge the same conspir-

acy does not, however, end the inquiry. "[W]hen application of ... traditional double jeopardy analysis would bar a subsequent prosecution, '[a]n exception may exist where the State is unable to proceed on the more serious charge[3] at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.'" *Grady,* 495 U.S. at 516 n. 7, 110 S.Ct. 2084 (internal citations omitted); *see Macchia,* 35 F.3d at 664 (Newman, J. concurring). As Justice O'Connor explained in her concurrence in *Garrett v. United States,* 471 U.S. 773, 795–97, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), the "constitutional proscription [against double jeopardy] serves primarily to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching." The "finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law." *Id.* (collecting exceptions, including "[d]icta in *Brown v. Ohio* suggesting that the same conclusion would apply where the later prosecution rests on facts that the government could not have discovered earlier through due diligence."). Thus, "absent governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect, the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding." *Id.* (internal citations and quotations omitted).

In this case, the Government has presented uncontroverted evidence that it did

---

**3.** Although in one sense the charge in Count 13 of the Connecticut Indictment is not more serious because it charges the same statutory offense, it is undoubtedly more serious when viewed within the framework of the Sentencing Guidelines, under which applicable penalties are based on all of a defendant's relevant conduct. U.S.S.G. § 1B1.3.

not, and indeed could not, reasonably have known of the facts supporting the conspiracy to possess with intent to distribute cocaine base alleged in Count 13 of the Connecticut Indictment at the time Gonzalez was charged in the New York Indictment.[4] For example, the agents' notes from the New York investigation indicate that law enforcement authorities there were targeting Cano–Lopez, not Gonzalez or any of his co-defendants named in the Connecticut Indictment. Furthermore, the information presented to the grand jury that returned the New York Indictment includes no mention of any connection of the attempted purchase to a broader Connecticut-based conspiracy.

It is further undisputed that an FBI task force only began investigating the conspiracies charged in the Connecticut Indictment in 1998, after Gonzalez had already pled guilty to the New York Indictment. In fact, although the first indictment in this case was returned in November of 2000, Gonzalez was not named as a defendant until the second superceding indictment was returned in June of 2001. The Government was not aware of Gonzalez' involvement in the conspiracies charged in the Connecticut Indictment until after a Connecticut state inmate voluntarily wrote a letter to the Assistant United States Attorney handling this case indicating that he had relevant information concerning Estrada and his alleged coconspirators. That cooperating witness was subsequently interviewed, and the information he provided was corroborated with information provided by other cooperating witnesses.

■ This is clearly not, therefore, a case where the Government has, after conclud-

ing that Gonzalez' sentence for the charges in the New York Indictment was inadequate, sought to prosecute him for the "larger" conspiracy charged in the Connecticut Indictment. *Macchia*, 35 F.3d at 672 (Newman, J., concurring) (discussing this possibility). Thus, by allowing the prosecution to proceed on the present indictment, the court is not "unduly expos[ing] [Gonzalez] to oppressive tactics by the Government," because, under the circumstances of this case, the Government could not have "treat[ed] the first trial as no more than a dry run for the [present] prosecution." *Garrett*, 471 U.S. at 795–97, 105 S.Ct. 2407. Accordingly, although Count 13 of the Connecticut Indictment charges the same conspiracy as that charged in the New York Indictment, and prosecution of Count 13 would, as a consequence, ordinarily be barred, dismissal is not appropriate because the Government did not know, and could not reasonably have known, of the facts supporting the charges in Count 13 of the Connecticut Indictment at the time it charged Gonzalez in the New York Indictment.

## CONCLUSION

For the foregoing reasons, Gonzalez' Motion to Dismiss [**doc # 806**] is denied.

It is so ordered.

---

4. Gonzalez does not, and indeed could not, argue that the current prosecution violates the terms of his plea agreement in New York. On its face, the New York plea agreement binds only the U.S. Attorney's Office for the Eastern District of New York. *See United States v. Salameh*, 152 F.3d 88 (2d Cir.1998).