19-590-cr
United States v. Hicks

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2020

(Argued: February 11, 2021        Decided: July 16, 2021)

Docket No. 19-590-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

AARON HICKS, AKA BOOG, AKA BOOGY,

*Defendant-Appellant.*[*]

_____

Before:

PARKER, LOHIER, and MENASHI, *Circuit Judges.*

Aaron Hicks was convicted after trial of marijuana conspiracy but acquitted of cocaine and cocaine base conspiracy and a related firearms charge. The jury was unable to reach a verdict as to the charge of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). Following a second jury trial, Hicks was convicted of the RICO conspiracy count and sentenced by the United States District Court for the Western District of New York (Arcara, J.) principally to 360 months' imprisonment for both the marijuana conspiracy and RICO conspiracy counts of conviction. On appeal, Hicks argues that evidence introduced in his second trial violated his double jeopardy rights

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

and objects to the severance of his trial from that of his co-defendant.  We **AFFIRM** the judgment of the District Court**.**

JAMESA J. DRAKE, Drake Law LLC, Auburn, ME, *for Defendant-Appellant Aaron Hicks*.

MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee United States of America*.

LOHIER, *Circuit Judge*:

Aaron Hicks was retried on one count of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), after having been convicted in an earlier trial of participating in a marijuana trafficking conspiracy but acquitted of participating in a cocaine and cocaine base conspiracy and a related firearms charge.  Before his first trial, Hicks moved to disqualify the attorney for one of his co-defendants because the attorney had previously represented Hicks in a related state court matter.  The United States District Court for the Western District of New York (Arcara, J.) denied the motion.  It elected instead to sever Hicks's trial from that of the co-defendant and proceeded to try Hicks alone.  Hicks claims that this was an abuse of discretion.  During the retrial, moreover, the District Court admitted evidence suggesting that Hicks had participated in the cocaine conspiracy notwithstanding his earlier

acquittal. On appeal, Hicks argues that this violated his rights under the Double Jeopardy Clause.

We address two questions. First, did the District Court's decision to admit evidence of Hicks's involvement in cocaine or cocaine base trafficking during his retrial on the RICO conspiracy charge violate the prohibition against double jeopardy? Second, did the District Court err when it denied Hicks's motion to disqualify his co-defendant's counsel and instead severed Hicks's trial?

We answer each question in the negative and affirm the judgment of the District Court.

**BACKGROUND**

In 2015 Hicks, along with other defendants, was charged principally with conspiracy to distribute marijuana, cocaine, and cocaine base in violation of 21 U.S.C. § 846, possession of a firearm in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and RICO conspiracy in violation of 18 U.S.C. § 1962(d). Before trial, Hicks moved to disqualify co-defendant Roderick Arrington's counsel, Andrew LoTempio, on the ground that LoTempio had previously represented Hicks in a state court matter that, it turned out, the Government alleged was an overt act in

furtherance of the RICO conspiracy charged in this case. The District Court held a Curcio hearing to probe the nature of LoTempio's potential conflict and to determine whether Arrington would waive the conflict. See United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). After the hearing, Arrington waived the potential conflict, and the District Court accepted Arrington's waiver.[1]

The District Court nevertheless recognized that Arrington's waiver did not fully resolve the potential conflicts that might arise in a joint trial. If Hicks testified, the court observed, LoTempio could exploit his prior representation of Hicks to cross-examine him. To avoid this problem, LoTempio proposed severing Hicks's trial from Arrington's, while Hicks sought LoTempio's disqualification altogether. The District Court decided that severing the trials was the better option. Disqualifying LoTempio as Hicks proposed, it explained, would violate Arrington's Sixth Amendment right to be represented by the counsel of his choice.

Hicks was tried alone. At trial the Government sought to prove that Hicks was a member of a violent Buffalo-based drug-trafficking organization it called

---

[1] This Court later held that Arrington's waiver was not knowing and intelligent because he was not fully informed of the consequences of the waiver. See United States v. Arrington, 941 F.3d 24, 42–44 (2d Cir. 2019).

4

the "Schuele Boys." The Government introduced evidence that Hicks and other Schuele Boys members trafficked in marijuana, cocaine, and cocaine base.[2] For example, one cooperating government witness, Julio Contreras, testified that he started selling cocaine to Hicks, his main contact within the Schuele Boys, in late 2010, with an initial shipment of sixteen kilograms of cocaine from Texas to Buffalo. Contreras continued to transport cocaine routinely from Texas directly to Hicks until Contreras was arrested a year later, in November 2011. There was also evidence that Hicks, Arrington, and others plotted to murder Quincy Balance in retaliation for the murder of a Schuele Boys member. One witness testified that Hicks and others discussed murdering Balance, while another placed Hicks at the scene of Balance's murder.

The jury reached a mixed verdict. It found Hicks guilty of engaging in the marijuana conspiracy, but it acquitted him of conspiring to traffic in cocaine or cocaine base.[3] Hicks was also acquitted of the firearm possession charge. The

---

[2] In addition to evidence of various drug deals, the Government introduced two music videos produced by a record label associated with the Schuele Boys that featured lyrics about the drug business and depicted Hicks (and others) with cash and prop drugs.

[3] On the special verdict form finding Hicks guilty of a narcotics conspiracy only with respect to marijuana, the jury checked "marijuana" but wrote nothing next to "cocaine" or "cocaine base." The District Court understood that this alone would not be enough to conclude that Hicks was *acquitted* of trafficking in cocaine or cocaine base. See United

jury was unable to reach a verdict on the RICO conspiracy count, as to which the District Court declared a mistrial. Hicks moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Because it was likely that he would be retried on the RICO conspiracy count, he also moved to exclude evidence of any cocaine or cocaine base trafficking in the retrial. Admitting the evidence, he claimed, would violate his double jeopardy rights.

The District Court denied both motions. On the motion to exclude evidence at the retrial, it explained that the jury could have concluded "that cocaine and cocaine base conspiracies existed but that [Hicks] was not a member of the conspiracies." Sp. App'x 35. Because double jeopardy attached only if the jury had necessarily decided both of those elements in Hicks's favor and because the retrial involved the very different charge of RICO conspiracy, the court

---

States v. Gotti, 451 F.3d 133, 136 (2d Cir. 2006) ("[A] jury verdict must be unanimous.") (citing Fed. R. Crim. P. 31(a)). The District Court nevertheless concluded that an acquittal could be inferred "[b]ased on the Court's instruction to the jury, together with the way in which the jury returned its verdict on Count 2"; when the clerk asked whether the jury had found that Hicks had trafficked in cocaine or cocaine base, the foreperson said "no" rather than "unable to reach a verdict," which is how the District Court had instructed the foreperson to respond when the jury was unable to reach a unanimous verdict. Sp. App'x 22-23 & n.3. Neither party disputes that the jury acquitted Hicks of cocaine or cocaine base trafficking.

6

reasoned, there was no basis to preclude evidence of the cocaine or cocaine base trafficking in Hicks's retrial.

Hicks was retried in 2018. At the retrial, the Government relied on substantially the same evidence that it had presented during the first trial.[4] In particular, it reintroduced evidence that Contreras regularly shipped cocaine from Texas to Hicks in Buffalo—the same evidence that it had used unsuccessfully in the first trial to convict Hicks of engaging in a cocaine conspiracy. The Government also emphasized the relationship between Contreras and Hicks in its summation, as follows: "Contreras told you that they became members, right; that he came up in November of 2010 with 16 kilograms of cocaine and they established what the prices were going to be and how they were going to be sold . . . . [T]hey established their agreement then. [Hicks] knew that he was a member, knew what he was getting into." App'x 2820.

The second jury convicted Hicks of the RICO conspiracy count. The District Court then sentenced Hicks principally to 360 months' imprisonment. This appeal followed.

---

[4] The only new evidence of Hicks's participation in a cocaine conspiracy that was admitted at the retrial consisted of the testimony of an individual who said he sold marijuana and cocaine that he had obtained from Hicks.

7

**DISCUSSION**

Hicks challenges his RICO conspiracy conviction on double jeopardy grounds. He challenges his convictions for both marijuana conspiracy and RICO conspiracy on the ground that the District Court should not have severed his trial.

I

A

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." Currier v. Virginia, 138 S. Ct. 2144, 2149 (2018).

The clause has two components. The more familiar "charging" component derives from the Supreme Court's opinion in Blockburger v. United States, 284 U.S. 299 (1932), and governs the charges that the government may pursue against a criminal defendant. It "embodies a kind of 'claim preclusion' rule, [but]

bears little in common with its civil counterpart." Currier, 138 S. Ct. at 2154. The charging component "asks whether each offense contains an element not contained in the other, and provides that, if not, they are the same offense and double jeopardy bars additional punishment." United States v. Garavito-Garcia, 827 F.3d 242, 250 (2d Cir. 2016) (quotation marks omitted).

The Government was not barred on double jeopardy grounds from retrying Hicks for RICO conspiracy. As Hicks concedes, the elements of the narcotics conspiracy of which he was acquitted and the elements of the RICO conspiracy count of conviction that he challenges on appeal differ substantially. A narcotics conspiracy that involves five or more kilograms of cocaine, as was alleged here, requires that the Government prove the existence of the conspiracy, that the defendant willfully joined it, and the drug quantity. See United States v. Taylor, 816 F.3d 12, 19 (2d Cir. 2016). The RICO conspiracy charged here, meanwhile, has the following elements: (1) "an agreement to join a racketeering scheme"; (2) "the defendant's knowing engagement in the scheme with the intent that the overall goals be effectuated"; and (3) "that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." United States v. Zemlyansky, 908 F.3d 1,

9

11 (2d Cir. 2018). Because each offense contains at least one element not contained in the other, we are persuaded that the charging component of the Double Jeopardy Clause is not implicated here.

We therefore turn to the second component of double jeopardy, sometimes described as the "issue preclusion" component, which is more relevant to this appeal. It "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." Yeager v. United States, 557 U.S. 110, 119 (2009). Put another way, "a jury verdict that necessarily decided [an] issue in [a defendant's] favor protects him from prosecution for any charge for which that [issue] is an essential element." Id. at 123. The defendant bears the burden of persuading "the court that the issue he seeks to foreclose was necessarily decided in his favor by the prior verdict." United States v. McGowan, 58 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted). The burden of persuasion "is particularly onerous where the acquittal in the first trial involves the crime of conspiracy." United States v. Clark, 613 F.2d 391, 400 (2d Cir. 1979). In a different but relevant context involving the first component of double jeopardy, for example, we have described how "[a] charge of a wide-ranging narcotics conspiracy consisting of numerous transactions is . . . sufficiently

10

distinct from a charge of a substantive violation based on a single sale" that the prohibition against double jeopardy permits both a prosecution for conspiracy and a prosecution based on the substantive sale. United States v. Ortega-Alvarez, 506 F.2d 455, 457–58 (2d Cir. 1974).

When the challenge is to the Government's use of evidence at a retrial, the defendant must show that the Government sought "to reuse the [challenged] evidence for the specific purpose of proving conduct of which he was previously acquitted." Zemlyansky, 908 F.3d at 13. We assess that challenge by examining "the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Clark, 613 F.2d at 400 (quotation marks omitted).

As an initial matter, Hicks's argument that the Government was barred from reusing any evidence of cocaine or cocaine base trafficking is unavailing. Hicks was not charged with a substantive drug crime at his original trial. The Government therefore was not required to show that he bought or sold drugs for the jury to convict him of conspiring to do the same. The jury's verdict of

11

acquittal as to the cocaine and cocaine base conspiracy charge reflects only that it found either that the conspiracy never existed or that Hicks never joined it. See Taylor, 816 F.3d at 19. In other words, Hicks's involvement in any particular cocaine or cocaine base transaction was not a fact "necessarily decided in his favor by the prior verdict." McGowan, 58 F.3d at 12 (quotation marks omitted). Nor (as we explain further below) does the Government appear to have introduced the challenged evidence of Hicks's prior cocaine trafficking with the "specific purpose" of proving that he had joined a cocaine conspiracy. See Zemlyansky, 908 F.3d at 13. The District Court was thus free to admit that evidence as proof of Hicks's participation in the RICO conspiracy.

Relying on United States v. Mespoulede, Hicks argues that he was retried in part on the acquitted conduct "just as if [the first] trial had never taken place." 597 F.2d 329, 335 (2d Cir. 1979). Because his argument ignores the important difference for a double jeopardy claim between a substantive crime and a crime of conspiracy, Hicks's reliance on Mespoulede is misplaced. In that case, the defendant was first acquitted of a substantive charge of narcotics possession arising from the sale of drugs on a specific date and then retried for conspiring to do the same. Id. at 330–31. This Court held that it was error to admit evidence

that the defendant possessed cocaine on the same date. See id. at 335–36. We explained that "the Government was free to introduce new evidence of various illicit deals and to persuade the jury that it should infer the existence of a conspiracy from these transactions," but that the defendant could not be forced again "to confront an assertion that he possessed cocaine" on the relevant date. Id. at 335. Here, by contrast, the first jury was not required to find that Hicks was involved in specific drug transactions on specific dates.

Following up on the same theme, Hicks submits that the District Court also should have excluded evidence of the cocaine conspiracy itself, let alone his involvement in that conspiracy. But here again the existence of a cocaine conspiracy was not a fact necessarily decided by the jury in Hicks's favor. As the District Court observed, the jury could have found that the conspiracy existed but that Hicks had not joined it. And under those circumstances, the prohibition against double jeopardy would not prevent the Government from introducing (or the District Court from admitting) evidence of the conspiracy itself at Hicks's retrial. See Zemlyansky, 908 F.3d at 13–14.

13

B

Hicks raises similar double jeopardy concerns stemming from the Government's summation at the retrial, during which the Government's attorney explained: "Contreras told you that they became members, right; that he came up in November of 2010 with 16 kilograms of cocaine and they established what the prices were going to be and how they were going to be sold . . . . [T]hey established their agreement then. [Hicks] knew that he was a member, knew what he was getting into." App'x 2820. This summation, Hicks argues, used the challenged evidence relating to the cocaine conspiracy for the "specific purpose" of showing that he willfully joined it despite his prior acquittal. Zemlyansky, 908 F.3d at 13.

In addressing this argument, we keep in mind that "[i]t is a rare case in which we will identify a prosecutor's summation comments, even if objectionable, as so prejudicial as to warrant relief from conviction." United States v. Aquart, 912 F.3d 1, 27 (2d Cir. 2018) (quotation marks omitted). Because summation arguments "frequently require improvisation, courts will not lightly infer that every remark is intended to carry its most dangerous meaning."

United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (quotation marks omitted).

A fair reading of the challenged summation is that the Government pointed to Contreras's testimony to encourage the jury to find that Hicks and Contreras participated in and were members of the charged RICO conspiracy, not the cocaine conspiracy. After all, objects of the RICO conspiracy included cocaine trafficking, as well as murder and the use of firearms. But the existence of a cocaine conspiracy (as opposed to the substantive crime of cocaine trafficking) was not necessary to convict Hicks for his involvement in the RICO conspiracy. The prosecutor never actually referred to a cocaine conspiracy, and the prosecutor's remarks, though imprecise and perhaps infelicitous, did not cross the line to encourage the jury to find that Hicks was a member of a cocaine conspiracy separate and apart from the RICO conspiracy. Although a close call, we conclude that the Government did not seek "to reuse the evidence for the specific purpose of proving conduct of which he was previously acquitted." Zemlyansky, 908 F.3d at 13 (emphasis added).

Nor, in any event, were the prosecutor's remarks "so prejudicial as to warrant relief from conviction." Aquart, 912 F.3d at 27. Before the retrial Hicks

15

had urged the District Court to exclude all evidence of a cocaine conspiracy on double jeopardy grounds.  The District Court denied the motion because (as we have noted above) the jury could have determined that a cocaine conspiracy existed but that Hicks never joined it.  During the Government's summation, however, Hicks failed to object to the prosecutor's arguably contrary suggestion that he had joined the conspiracy.  Hicks's failure to object means that we review only for plain error—that "there was an error that is clear or obvious, [and] that the error affected [his] substantial rights, which in the ordinary case means it affected the outcome of the district proceedings; and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  United States v. Williams, 690 F.3d 70, 77 (2d Cir. 2012) (quotation marks omitted).

Here, the Government was under no obligation to show that Hicks committed or agreed to commit any of the predicate acts charged in the RICO conspiracy count.  It needed to prove only that Hicks "intended that the broad goals of the racketeering scheme be realized, along with evidence that some (or any) members of the conspiracy intended that specific criminal acts be accomplished."  Zemlyansky, 908 F.3d at 11.  At both the first trial and the retrial, there was strong evidence that Hicks and other Schuele Boys gang members

16

were involved in Balance's murder, the distribution of marijuana, and the use of firearms. So the jury's verdict was amply supported by evidence separate and apart from the challenged evidence of Hicks's participation in a cocaine conspiracy with Contreras. We therefore conclude that the Government's arguably objectionable (but unobjected to) summation comments did not impact the outcome of Hicks's retrial or affect his substantial rights.

II

On appeal, Hicks continues to insist that the District Court erred when it severed his trial. He argues that Judge Arcara should have disqualified Arrington's conflicted counsel (LoTempio) and held a joint trial. We disagree, largely because "[t]he decision to sever [a trial] . . . is committed to the sound discretion of the trial judge, and we will not override an exercise of that discretion absent clear abuse." United States v. Delgado, 972 F.3d 63, 81 (2d Cir. 2020) (quotation marks omitted).

This Court has previously considered the potential conflict presented by LoTempio's representation of Arrington—after having represented Hicks in one of the charged overt acts—in United States v. Arrington, 941 F.3d 24 (2d Cir. 2019). As mentioned, Arrington asked to keep LoTempio as his counsel at a joint

trial with Hicks, notwithstanding the potential conflict. Hicks asked to disqualify LoTempio rather than sever the trials. The District Court severed the trial because it was "[t]he only apparent way to protect" the rights of both Hicks and Arrington. Sp. App'x 19. In particular, the court said, "disqualification of . . . LoTempio . . . would violate . . . Arrington's Sixth Amendment right to be represented by the counsel of his choice." Id. In our decision on appeal, we explained that "LoTempio . . . represented Hicks with respect to one of the overt acts in the indictment, and he was therefore barred from using the fruits of that representation to benefit Arrington or from fully cross-examining witnesses about related events. The effects of this conflict would have been magnified had Hicks testified in his own defense at a joint trial." Arrington, 941 F.3d at 41. We also held that Arrington's decision to waive the conflict and to retain LoTempio was not knowing and intelligent because he had never been properly apprised of "the main strategic disadvantages arising from LoTempio's conflict"—that Arrington's trial would be severed from his co-defendant's and that he would proceed to trial first. Id. at 42–43.

On this appeal, Hicks points to our prior holding to suggest that Arrington did not ever meaningfully choose LoTempio as his counsel. He argues that the

District Court was thus compelled to disqualify LoTempio as a less drastic alternative to severance, even though we have held that district courts "have broad latitude in making a decision whether to disqualify a defendant's chosen counsel." United States v. Cain, 671 F.3d 271, 294 (2d Cir. 2012) (quotation marks omitted).

Hicks's argument assumes that Arrington would have rejected LoTempio had he been properly informed of the pitfalls of not doing so. Nothing in the record supports that assumption. More importantly, Hicks's argument also assumes that he had a "discernible right" to a joint trial with Arrington. But like Arrington, he did not. Arrington, 941 F.3d at 42 ("Arrington had no discernible right to proceed to trial with or after Hicks." (citing Zafiro v. United States, 506 U.S. 534, 539–40 (1993))). And in the absence of a clear right to a joint trial and faced with an unpalatable alternative that potentially would have violated Arrington's Sixth Amendment right to counsel of his choice, it was not an abuse of discretion for the District Court to sever the trials.

**CONCLUSION**

We have considered Hicks's remaining arguments and conclude that they are without sufficient merit to warrant reversal. For the foregoing reasons, we AFFIRM the judgment of the District Court.